[Cite as *State v. Sutton*, 2014-Ohio-1074.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
### No. 100037

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# TIMOTHY SUTTON, JR.

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-10-543964

**BEFORE:** McCormack, J., Keough, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** March 20, 2014

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Ave.
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   Jeffrey S. Schnatter
Joseph J. Ricotta
Assistant County Prosecutors
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Timothy Sutton, Jr., appeals his conviction for breaking and entering in violation of R.C. 2911.13(A), a felony of the fifth degree, and assigns five errors for our review. For the reasons that follow, we affirm the conviction.

## Procedural History

{¶2} Initially, on November 17, 2010, Sutton was indicted for one count of burglary, in violation of R.C. 2911.12(A)(2), with notice of a prior conviction and a repeat violent offender specification, alleging that Sutton was convicted of burglary and vandalism in a previous matter in 2006, and one count of vandalism, in violation of R.C. 2909.05(A). Sutton pleaded not guilty to the charges, and the matter proceeded to a jury trial on January 19, 2011. At the close of the state's case, the state dismissed the vandalism charge. The jury subsequently found Sutton guilty of burglary, and the trial court convicted him of the notice of prior conviction and the repeat violent offender specification. The court sentenced Sutton to eight years for the burglary and three years for the repeat violent offender specification.

{¶3} Sutton appealed his conviction to this court in *State v. Sutton*, 8th Dist. Cuyahoga No. 96408, 2011-Ohio-6270. On appeal, we reversed Sutton's conviction and remanded for a new trial, finding that the trial court's allowance of "other acts" evidence was prejudicial and a violation of Evid.R. 404(B). *Id.*

**{¶4}** On May 20, 2013, Sutton was tried for a second time for burglary, in violation of R.C. 2911.12(A)(2), the vandalism count having been dismissed by the state in the first trial. He waived his right to a jury trial, and the matter was tried to the bench. At trial, defense counsel moved for dismissal under Crim.R. 29, which the court overruled. The defense subsequently requested the court consider the lesser included offenses of breaking and entering, in violation of R.C. 2911.13, and criminal trespass, in violation of R.C. 2911.21. The court then found Sutton guilty of the lesser included offense of breaking and entering.

**{¶5}** The court ordered a presentence investigation report and continued the matter for sentencing. On May 22, 2013, the court sentenced Sutton to 12 months incarceration, subject to a potential three-year period of postrelease control.

### Substantive Facts

**{¶6}** On October 4, 2010, at around 5:00 p.m., Larry Philpotts, who resided at 3647 Martin Luther King Blvd., in Cleveland, Ohio, was watching television in the back room of his house when he observed a thin black male break the window of the back door at 3641 Martin Luther King Blvd. Philpotts testified that he saw the male stick his hand in the broken window and unlock the door while standing on a five-gallon bucket in order to reach inside. He stated that he then saw the male enter the residence.

**{¶7}** While the male was inside, Philpotts called the Cleveland police and reported that a man was breaking into his neighbor's home and had entered through the back door. Philpotts called the police a second time, approximately six minutes later,

and reported that the male was still inside the house. After placing the second call, Philpotts went outside and observed the male coming out of the neighbor's driveway. He testified that he asked the male why he went in the house, to which the male responded that "he was just looking around." While he was unable to identify Sutton at trial, Philpotts testified that the male he saw breaking into the house next door, the one who also admitted to Philpotts that he was inside the home, is the same male the police took into custody that day.

{¶8} At approximately 5:00 p.m., on the date in question, Cleveland Police Officer Jovan Larkin, along with her partner, Officer Thelemon Powell, responded to a code one high priority call from dispatch concerning a male breaking into a vacant house located at 3641 Martin Luther King Blvd. Officer Larkin testified that she and her partner arrived at the house in less than ten minutes. Upon arriving, Officer Larkin observed two males standing in front of the residence next to the house to which they were responding.

{¶9} Officer Larkin approached the two men, learned that Philpotts was the next door neighbor, and inquired as to what was going on. Philpotts indicated that the man with whom he was standing, later identified as Sutton, was the man who had broken into 3641 Martin Luther King Blvd. Officer Larkin went to the rear of the home and observed the broken window of the rear door, broken glass on the porch in front of the door, and pieces of glass in the entranceway inside the home. The officer further investigated the view of the back door that Philpotts had when he observed the male

breaking the window, and determined that Philpotts had a clear, unobstructed view of the back door from his back room.

{¶10} Upon further investigation, the officer learned that the house in question was listed for sale and the realtor was Pearlie Durrah. Her name and phone number were listed on the sign. Officer Larkin attempted to contact Durrah to no avail. She included Durrah's name as the victim in the police report.

{¶11} Officer Larkin testified that once Sutton was detained in the officer's zone car, Sutton indicated that he was interested in purchasing the property. The officer stated that what Sutton told her was inconsistent with what she learned from Philpotts. Based upon her investigation, the evidence on the scene, and her conversations with Philpotts and Sutton, Officer Larkin made a decision to place Sutton under arrest. At trial, Officer Larkin identified Sutton as the man she saw standing with Philpotts on the day in question.

{¶12} Pearlie Durrah, the real estate broker who had listed the property for sale, testified that she received a phone call from Philpotts, who informed her that someone had broken into the vacant property she had listed. She and her husband, Donald Durrah, arrived on the scene within 15 minutes of receiving the phone call. Upon arriving, she observed broken glass on the inside of the back door as well as glass on the porch floor immediately outside the door.

{¶13} Durrah testified that she and her husband would visit the home approximately two times per week, at different times of the day. The last time she was

on the property was within one week of the incident on October 4. She stated that she always inspected the property on each visit, and the last time she was on the property, she did not recall seeing damage to any of the doors. She testified that some clothes, a piano, an organ, and some lamps were in the house at the time. She did not believe the items, with the exception of the piano and the organ, had any significant value. She did not believe that the piano and the organ, the only items of value, could be lifted by a single person. She stated that in order to open the back door without a key, one would need to break the glass window.

{¶14} Durrah testified that she was the only person authorized to show the property in question. She further testified that she had no appointments to show the property on October 4, was never contacted by Sutton for purposes of viewing the property, and had never seen Sutton in relation to showing the home. She did not give anyone permission to enter the home on October 4.

{¶15} Donald Durrah testified that the security gate on the property was unlocked when he arrived to inspect the home after the incident in question. He stated that the security gate could be opened by sticking a hand through the gate and pulling the slide bolt out. When he arrived, the rear door with the broken window was unlocked. It would ordinarily have been locked. He observed broken glass on the floor inside the door.

**Assignments of Error**[1]

---

[1] For ease of discussion, we will discuss the assignments of error out of sequence.

I.    The trial court erred in denying appellant's motion for acquittal when the state failed to present sufficient evidence to sustain a conviction.

II.   Appellant's conviction is against the manifest weight of the evidence.

III.  The trial court erred in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution which provide rights to confrontation and cross-examination, and Ohio [Evid.R.] 801 and 802, when it permitted state witnesses to testify with inadmissible hearsay statements.

IV.   Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article I, of the Ohio Constitution and the Sixth and Fourteenth Amendments of the U.S. Constitution.

V.    Appellant was denied a fair trial by the police officer's improper comments while testifying.

**Right of Confrontation**

{¶16} In his third assignment of error, Sutton claims that the trial court violated his right of confrontation when it allowed Officer Larkin to testify regarding Philpotts's out-of-court identification of Sutton as the person who broke into the house at 3641 Martin Luther King Blvd. Sutton contends that this statement is inadmissible hearsay.

{¶17} A trial court has broad discretion in admitting evidence; absent an abuse of that discretion and a showing of material prejudice, a trial court's ruling on the admissibility of evidence will be upheld. *Fackelman v. Micronix*, 8th Dist. Cuyahoga No. 98320, 2012-Ohio-5513, ¶ 17; *State v. Martin*, 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (1985).

**{¶18}** Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A statement is not hearsay if "[t]he declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * one of identification of a person soon after perceiving the person, if the circumstances demonstrate the reliability of the prior identification." Evid.R. 801(D)(1)(c); *State v. Houston*, 8th Dist. Cuyahoga No. 64574, 1994 Ohio App. LEXIS 52 (Jan. 13, 1994) (evidence of prior identification is not hearsay pursuant to Evid.R. 801(D)(1)(c) if the identification carries traditional indicia of trustworthiness and reliability). In a case of prior identification, it matters not that the witness cannot subsequently identify the offender at trial. Staff Note, Evid.R. 801(D)(1)(c); *see also State v. King*, 8th Dist. Cuyahoga No. 61040, 1993 Ohio App. LEXIS 1130, * 10 (Feb. 25, 1993).

**{¶19}** Here, Officer Larkin testified that upon arriving on the scene within ten minutes of receiving the call from dispatch, she observed two men standing in front of the residence next to the house to which the officers were responding. Officer Larkin approached the two men and inquired as to what was going on. At this point, Philpotts, who had placed the initial call to the police, told the officer that the man with whom he was standing was the man who had broken into 3641 Martin Luther King Blvd. Philpotts's statement to Officer Larkin was one of identification and was reported within minutes of personally witnessing Sutton enter his neighbor's home. The statement was

therefore trustworthy and reliable. Philpotts also testified at trial and was subject to cross-examination. Officer Larkin's statement in court as to Philpotts's identification of Sutton was therefore admissible under Evid.R. 801(D)(1)(c).

{¶20} Furthermore, Officer Larkin's testimony does not violate the Confrontation Clause. The Sixth Amendment to the United States Constitution grants the accused the right "to be confronted with the witnesses against him * * *." In *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." A defendant's constitutional right of confrontation is therefore not violated when the accuser is available for cross-examination at trial. *State v. Collins*, 8th Dist. Cuyahoga No. 89668, 2008-Ohio-2363, ¶ 57.

{¶21} In this case, Philpotts appeared at trial and was subject to cross-examination. Therefore, Officer Larkin's testimony concerning Philpotts's identification of Sutton as the man who entered his neighbor's home did not violate the Confrontation Clause.

{¶22} Sutton's third assignment of error is overruled.

## Ineffective Assistance of Counsel

{¶23} In his fourth assignment of error, Sutton argues that he was denied a fair trial because his trial counsel failed to object to Officer Larkin's alleged hearsay statements regarding Philpotts's identification of Sutton as outlined in his third assignment of error.

**{¶24}** In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) his counsel was deficient in some aspect of his representation, and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶25}** The first element requires a showing that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. It necessarily requires that when a defendant complains of the ineffectiveness of counsel's assistance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-688.

**{¶26}** Regarding the second element, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), citing *Strickland* at 694. Moreover, a defendant's failure to satisfy one element of the *Strickland* test negates the court's need to consider the other. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland* at 697.

**{¶27}** As we previously determined in Sutton's third assignment of error, Officer Larkin's testimony in court as to Philpotts's identification of Sutton as the man he saw enter his neighbor's home was admissible under Evid.R. 801(D)(1)(c). Philpotts's statement to Officer Larkin was one of identification, it was given within moments of Philpotts's personal observation of Sutton's actions, and Philpotts was available at trial and subject to cross-examination. As such, trial counsel's failure to object to such

testimony did not constitute deficient performance. Absent a showing of deficient representation, Sutton's claim of ineffective assistance of counsel must fail.

{¶28} Sutton's fourth assignment of error is overruled.

## Sufficiency of the Evidence

{¶29} In his first assignment of error, Sutton contends that the trial court erred in denying his Crim.R. 29(A) motion for acquittal because there was insufficient evidence to support his conviction for breaking and entering.

{¶30} A Crim.R. 29(A) motion challenges the sufficiency of the evidence. When reviewing a challenge of the sufficiency of the evidence, an appellate court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A sufficiency challenge requires us to review the record to determine whether the state presented evidence on each of the elements of the offense. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

**{¶31}** Sutton was convicted of breaking and entering in violation of R.C. 2911.13(A), which states that "[n]o person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft, offense, or felony." Sutton argues that the state failed to show that: he was the person Philpotts saw breaking into the home at 3641 Martin Luther King Blvd., he trespassed, or he intended to commit a theft offense on the property because there was no evidence that he took anything. We find no merit to this argument.

**{¶32}** First, Sutton claims that the state failed to establish that he was the person who entered the vacant home. The evidence, however, demonstrates as follows: Philpotts testified that he saw a thin black male break the window of the back door at 3641 Martin Luther King Blvd., stick his hand in the broken window, and unlock the door while standing on a five-gallon bucket in order to reach inside. He then saw the male enter the home. After he phoned police for the second time, Philpotts observed this same male coming out of the neighbor's driveway. Philpotts confronted the male and asked him why he went in the house, and the male told him "he was just looking around." While he could not positively identify Sutton in court, Philpotts testified that the male he saw breaking into the house next door, the one who also admitted to Philpotts that he was inside the home, is the same male the police took into custody that day. Officer Larkin testified that, upon arriving on the scene, Philpotts indicated that the man with whom he was standing was the man who had broken into 3641 Martin Luther King Blvd. At trial, Officer Larkin identified Sutton as the man she saw standing with Philpotts on October 4.

**{¶33}** When viewing this evidence in a light most favorable to the state, we find sufficient evidence identifying Sutton as the perpetrator. As we previously determined, Officer Larkin's testimony concerning Philpotts's identification of Sutton as the man he saw enter his neighbor's house was properly admitted as a statement of identification permitted under Evid.R. 801(D)(1)(c).

**{¶34}** We also find sufficient evidence to demonstrate that Sutton trespassed on the property. Trespass can be shown by circumstantial evidence, real evidence, and direct evidence, or any combination of the three. *State v. Collins*, 8th Dist. Cuyahoga No. 98350, 2013-Ohio-488, ¶ 15. Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish." *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. In contrast, "circumstantial evidence requires the drawing of inferences that are reasonably permitted by the evidence." *Id.* Circumstantial evidence carries the same weight as direct evidence. *Id.*, citing *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001).

**{¶35}** Here, as previously stated, Philpotts testified that he saw a male break a window on the rear door, reach his hand inside the window to unlock the door, and enter the home. Pearlie Durrah, the only person authorized to show the property, testified that she had no appointments to show the property on October 4, was never contacted by Sutton for purposes of viewing the property, and had never seen Sutton in relation to showing the home. She further testified that she did not give anyone permission to enter

the home on October 4. There was also evidence of a broken window in the back door and broken glass both inside the door and on the outside. We find this evidence is sufficient to show that Sutton trespassed.

**{¶36}** Finally, we find the evidence is sufficient to show that Sutton entered the property with the purpose to commit a theft. Sutton argues that there was no evidence that he took anything from the home. However, the intent to commit a theft can be inferred from the fact of forcible entry, absent circumstances giving rise to a different inference. *State v. Roseberry*, 197 Ohio App.3d 256, 2011-Ohio-5921, 967 N.E.2d 233, ¶ 47 (8th Dist.), citing *State v. Flowers*, 16 Ohio App.3d 313, 315, 475 N.E.2d 790 (10th Dist.1984), *overruled on other grounds, State v. Fontes*, 87 Ohio St.3d 527, 721 N.E.2d 1037 (2000); *State v. Powers*, 8th Dist. Cuyahoga No. 86365, 2006-Ohio-2458, ¶ 23; *State v. Turner*, 8th Dist. No. 78630, 2001 Ohio App. LEXIS 3718 (Aug. 23, 2001).

**{¶37}** In this case, it is reasonable to infer that Sutton entered the home with the intent to commit theft. The evidence showed that Sutton broke a window in a back door in order to enter the home. Unbeknownst to Sutton, the only items of value in the home were a piano and an organ, which were too large for a single person to carry. Sutton therefore left the home with nothing in his hands. The fact that Sutton's purpose may have been frustrated by the contents in the home, or lack thereof, does not alter his intent. The state was not required to show that he actually stole something in order to convict him of breaking and entering under R.C. 2911.13(A). *State v. Russell*, 12th Dist. Butler No. CA2012-08-156, 2013-Ohio-3079, ¶ 38.

**{¶38}** According to Philpotts, Sutton told him that he was only "looking around," when Philpotts confronted Sutton soon after he exited the home. However, the finder of fact is not required to accept a "competing inference of innocence" when the same circumstances could also infer guilt beyond a reasonable doubt. *State v. Galloway*, 10th Dist. Franklin No. 03AP-407, 2004-Ohio-557, ¶ 25, citing *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492.

**{¶39}** In light of the above, it is reasonable to infer that Sutton's purpose in breaking into the home on Martin Luther King Blvd. was to commit a theft offense.

**{¶40}** Viewing all of the evidence in the light most favorable to the prosecution, we find that there was sufficient evidence supporting Sutton's conviction for breaking and entering. Accordingly, Sutton's first assignment of error is overruled.

## Manifest Weight of the Evidence

**{¶41}** In his second assignment of error, Sutton contends that his conviction is against the manifest weight of the evidence.

**{¶42}** Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue.

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new

trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶43} In evaluating a manifest weight claim, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). A factfinder is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

{¶44} In support of his argument, Sutton once again argues that the state failed to provide sufficient, or "requisite," evidence to support a conviction. He relies on his claim that Philpotts, the sole eyewitness, was unable to identify Sutton at trial as the person who broke into the home.

{¶45} While it is true that Philpotts was unable to positively identify Sutton in the courtroom as the perpetrator, he made a prior identification of Sutton at the scene. Philpotts testified at trial that he saw a male break the window of the back door at 3641 Martin Luther King Blvd. and stick his hand inside the broken window, while

standing on a bucket in order to reach inside. He further testified that he saw the male then enter the home. After calling the police, Philpotts observed this same male coming out of the neighbor's driveway. Upon confronting him, the male admitted to being inside the home. Philpotts testified that the male he saw break into the home is the same male the police took into custody on October 4. Officer Larkin testified that, upon arriving on the scene, Philpotts indicated that the male with whom he was standing was the same man who had broken into his neighbor's home. Officer Larkin testified at trial that Sutton was the man she saw standing with Philpotts on that day. The fact that Philpotts could not identify Sutton at trial, more than two and one-half years after the incident, is not fatal to Sutton's identity as the perpetrator where Philpotts made a prior identification to Officer Larkin at the scene within minutes of the alleged crime. Officer Larkin's testimony relating to Philpotts's identification is sufficient to establish Sutton's identity.

{¶46} Sutton also claims that the trial court "had plenty of tainted evidence from the first trial to rely upon[,] causing it to reach improper conclusions and thus an incorrect verdict" and it "wanted to hold someone accountable." He fails, however, to support his allegations with evidence from the record that would indicate the trial court considered anything other than the evidence presented at trial. Appellate courts will presume that a trial court considered only relevant and admissible evidence in a bench trial. *State v. Crawford*, 8th Dist. Cuyahoga No. 98605, 2013-Ohio-1659, ¶ 61.

{¶47} In light of the above, we cannot find that the factfinder clearly lost its way in convicting Sutton of breaking and entering and created such a manifest miscarriage of

justice that the conviction must be reversed. Sutton's second assignment of error is therefore overruled.

**Officer Larkin's Testimony Regarding Sutton's "Inconsistent" Statement**

{¶48} In his fifth assignment of error, Sutton argues that the trial court erred by allowing Officer Larkin to testify about Sutton's stated reason for being on the property as being "inconsistent." He claims that Officer Larkin's testimony was a comment on the truthfulness of Sutton's statement and was therefore improper.

{¶49} This court has held that it is improper for a witness to vouch for the credibility of another witness. *State v. Young*, 8th Dist. Cuyahoga No. 79243, 2002-Ohio-2744 (holding that it was plain error when a detective testified that a witness was "telling the truth"). An officer is not vouching for witness credibility, however, by explaining the investigative procedure he followed. *State v. Monroe*, 8th Dist. Cuyahoga No. 94768, 2011-Ohio-3045, ¶ 34 (finding the detective's testimony that defendant's comment was inconsistent with other evidence did not invade the province of the jury); *see also State v. Smith*, 8th Dist. Cuyahoga No. 95243, 2011-Ohio-3051 (finding that the detective's testimony that one statement corroborated another is not to say that either was true, but rather that they were consistent).

{¶50} On cross-examination, in response to defense counsel's question, "He told you he was interested in the property, did he not?" — and over the state's objection, Officer Larkin indicated that she had spoken with Sutton once he was detained in her zone car and Sutton offered an explanation as to why he was on the property. On

redirect, the following exchange took place between the prosecutor and the officer:

Q: With what you learned from Mr. Philpotts, was it consistent with what Mr. Sutton's statement was?

A: No, sir, it was not consistent.

Q: After hearing from Mr. Philpotts and Mr. Sutton, did you make a decision that day in terms of whether or not to arrest?

A: Yes, I did, sir.

Q: What decision did you make?

A: I made a decision that day to place Mr. Sutton under arrest.

Q: Okay. And what in total went into that decision?

A: Based upon the evidence at the vacant property, sir.

Q: And [defense counsel] asked you if you collected any evidence as to whether or not Mr. Sutton committed a crime that day. Do you recall that?

A: Yes, that is correct.

Q: Okay. And you took a statement from Mr. Philpotts[. W]ould you consider that evidence?

A: Yes, sir.

{¶51} The above exchange reveals that Officer Larkin did not vouch for the credibility of one witness versus the other. She testified that in the course of her investigation, she received two statements that were inconsistent with each other — one from Philpotts and one from Sutton. Officer Larkin did not testify that either Philpotts or Sutton was telling the truth, nor did she give her opinion as to the veracity of their respective statements. Rather, Officer Larkin testified that what Sutton said was

inconsistent with what she learned during her investigation, which consisted of evidence she gathered from the scene, including Philpotts's statement. The officer's testimony regarding her investigative procedure and the decision to place Sutton under arrest was not a comment on the truthfulness of Sutton's statement and was therefore proper.

**{¶52}** Sutton's fifth assignment of error is overruled.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MARY EILEEN KILBANE, J., CONCUR