[Cite as *State v. Moore*, 2026-Ohio-96.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

     Appellee

v.

Antoine Maurice Moore

     Appellant

Court of Appeals No. L-24-1180,
L-24-1181

Trial Court No. CR0202302368,
CR0202401477

**<u>DECISION AND JUDGMENT</u>**

Decided: January 13, 2026

* * * * *

Julia R. Bates, Prosecuting Attorney and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee

Samuel E. Gold, for appellant

* * * * *

**MAYLE, J.**

{¶ 1}   In this consolidated appeal, following a jury trial, defendant-appellant, Antoine Moore, appeals the May 28, 2024 judgments of the Lucas County Court of Common Pleas, convicting him of breaking and entering.  For the following reasons, we affirm the trial court judgments.

## I.  Background

{¶ 2}  Antoine Moore was charged in two separate cases with breaking and entering, violations of R.C. 2911.13(A) and (C), fifth-degree felonies.  These charges arose from break-ins that occurred at the parking lot of the Taylor Automotive Body Shop on June 30, 2023, and March 4, 2024.  The cases were tried together to a jury, and the following evidence was presented at trial.

{¶ 3}  Taylor Automotive Body Shop experienced 11 break-ins to their parking lot between February 19 and June 30, 2023.  The parking lot was where Taylor stored customers' vehicles.  The lot was enclosed by a tall chain-link fence with razor and barbed wire wrapped around the top of it.  The perpetrator would either cut a hole in the fence or scale the barbed-wire fence to gain entry.  He would smash windows and steal items out of Taylor's customers' cars, like wallets, coins, air pods, chargers, electronics, and other items that people commonly leave in their vehicles.  Eventually, Taylor stopped locking the doors to the vehicles to minimize damage, and they installed cameras.

{¶ 4}  Toledo Police Detective Brian Lewandowski was assigned to investigate several of the break-ins.  When there were officers available, command officers would station someone to work in the area of the lot, hoping to catch the perpetrator in the act of committing the offense.  Taylor gave police a key to the lot.

{¶ 5}  On June 30, 2023, at approximately 4:00 a.m., now-Detective Benjamin Jordan was on patrol near the Taylor Automotive Body Shop and heard a car alarm go off.  Police found Antoine Moore inside the Taylor lot, and they arrested him.  He was

2.

found to be in possession of air pods, headphones, chargers, a dash camera, a cross pendant, and other small items that did not appear to belong to him. Photos of these items were admitted as exhibits at trial; they also included a watch, a ring, brass knuckles, a switchblade, and other small black cases. The arrest was captured on video, causing a notification to be sent to the manager's phone. The manager provided the video to Toledo Police, and it was admitted into evidence. There was conflicting testimony as to whether Moore made entry by cutting a hole in the fencing or by jumping over the fence.

{¶ 6} Taylor experienced another break-in in August of 2023, and then again in September. After that, someone broke in on March 4, 2024. Video cameras captured what appeared to be a black male dressed in a dark coat and khaki pants roaming the lot rummaging through vehicles sometime between 1:40 and 2:10 a.m. Recordings were admitted into evidence at trial. Although Taylor's manager had never seen Moore and the perpetrator's face was not visible in the video, he wondered if Moore had committed this offense.

{¶ 7} Detective Lewandowski knew that Moore was on electronic monitoring at that time, so he requested information about Moore's location during the early morning hours of March 4, 2024. Jessica Gonzalez, who works for Electronic Monitoring, testified that Moore's electronic monitoring device showed that he was in the Taylor Automotive Body Shop parking lot from 1:38 until 2:11 a.m. She conceded on cross-examination that the tracking may be off by about 100 feet, but she explained that because the GPS placed him at the specific address for so long, "it was confirmed he was

3.

at that address within that timeframe."  A copy of the electronic monitoring printout of his location was admitted into evidence.

{¶ 8}  Detective Lewandowski testified that since March 4, 2024, when Moore became unable to access Taylor's parking lot, there have been no further break-ins there. He could not rule out that other individuals were responsible for some of the prior break-ins, but he said that the cameras did not show more than one perpetrator at a time. Detective Lewandowski also testified that the length of the lot was about 300 feet long, and the width was more than 100 feet long.  Buildings run along the width of the lot on both sides.

{¶ 9}  Moore moved for acquittal under Crim.R. 29(A), which the trial court denied.  The jury found Moore guilty of both counts.  The trial court sentenced Moore to a prison term of ten months for the June 30, 2023 break-in and 11 months for the March 4, 2024 break-in, to be served consecutively, for a total prison term of 21 months.  Moore appealed.  He assigns the following errors for our review:

I.

The trial court erred when denying Appellant's criminal rule 29 motion for acquittal.

II.

The verdict of the trial court was against the manifest weight of the evidence presented.

## II.  Law and Analysis

{¶ 10} Moore's assignments of error challenge both the sufficiency and weight of the evidence.  We examine each of these assignments in turn.

4.

## A. Crim.R. 29(A)

{¶ 11} Moore acknowledges that Detective Jordan observed him in the lot after the first incident, but he claims that Detective Jordan did not observe him commit a theft offense on that occasion, and he denies that he had anything on his person connecting him to the break-in. As to the second incident, Moore argues that no witness saw him in the body-shop lot; he was determined only to have been *near* the lot. He further claims that he had nothing on his person connecting him to the break-in.

{¶ 12} The State responds that as to the first incident, Moore was apprehended *in* the Taylor lot—i.e., he was trespassing. Additionally, Moore was found to have items on his person that appeared to be stolen. As to the second incident, the State maintains that video evidence from Taylor's cameras showed one person in the lot between 1:20 and 2:15 a.m., and Moore's electronic monitoring unit showed that he was in the lot during that time. While there may have been a 100-foot rate of error with electronic monitoring, the State maintains that the lot was approximately 300 feet long by 150 feet wide with buildings on either side, and the monitoring printout showed that Moore was precisely in the middle of the lot at several points in time, therefore, the element of trespass was established. The State insists that Moore's intent to commit a theft can be inferred from the circumstances. It argues that the items depicted in the exhibits were associated with the March 4, 2024 break-in, however, a review of the transcript reveals that those items were found on Moore's person after the June 30, 2023 break-in.

5.

{¶ 13} A motion for acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence. *State v. Brinkley*, 2005-Ohio-1507, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 2006-Ohio-2417, ¶ 37.

{¶ 14} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212 (1978). "Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law." *State v. Richardson*, 2016-Ohio-8448, ¶ 13. Naturally, this requires "a review of the elements of the charged offense and a review of the state's evidence." *Id.*

{¶ 15} Under R.C. 2911.13(A), "[n]o person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony." As summarized above, Moore argues that the State failed to present sufficient evidence (1) that he trespassed, and (2) that he intended to commit a theft offense.

6.

{¶ 16} There was evidence of trespass as to both charges.  Police apprehended Moore *in* the Taylor lot on June 30, 2023.  And a rational trier of fact could conclude that the electronic monitoring placed Moore in the Taylor lot on March 4, 2024, between 1:38 and 2:11 a.m.

{¶ 17} As to the "purpose to commit a theft offense" element, "purpose and intent can be proven through circumstantial evidence alone." *State v. Galloway,* 2004-Ohio-557, ¶ 23 (10th Dist.).  "When a person is apprehended within a structure that he forcibly entered, it is reasonable to infer that he did so with the intent to commit a theft offense, in the absence of circumstances giving rise to a different inference." *Id.* at ¶ 25, citing *State v. Levingston*, 106 Ohio App.3d 433, 436 (1995).  "A finder of fact is not required to accept a competing inference of innocence if the same circumstances could also permit it to infer guilt beyond a reasonable doubt." *Id.*  Additionally, in proving the "purpose to commit a theft offense" element of breaking and entering, the State need not show that the defendant actually took anything.  *State v. Sutton,* 2014-Ohio-1074, ¶ 36-37 (8th Dist.).

{¶ 18} In *Galloway*, the State presented evidence that the defendant "was seen at 3:30 a.m. climbing down a six-foot fence topped with barbed wire, behind which were approximately twelve vans containing valuable equipment and materials."  *Galloway* at ¶ 26.  The court found that this evidence was sufficient to permit a finder of fact to infer that the defendant's actions demonstrated the purpose to commit a theft offense.

{¶ 19} Here, with respect to the June 30, 2023 break-in, a rational trier of fact could conclude that Moore's 4:00 a.m. entry into the fenced-in parking lot reinforced

7.

with barbed wire, combined with the sounding of a car alarm and the strange combination of items Moore was carrying–multiple chargers, a dash cam, ear buds, headphones, watch, ring, and other small containers—evidenced a purpose to commit a theft offense. As to the March 4, 2024 break-in, electronic monitoring show that Moore again entered into the secured lot in the middle of the night. The cameras show him peering into car windows, entering vehicles, and rifling through them. A rational trier of fact could properly conclude that this conduct evidenced Moore's purpose to steal items from those vehicles.

{¶ 20} We find Moore's first assignment of error not well-taken.

## B. Manifest Weight of the Evidence

{¶ 21} Moore argues that the State's witnesses testified that Moore was *near* the body-shop lot, but failed to "positively identify" Moore as the perpetrator of the break-ins. He claims that "the jury was presented with an accumulation of assumptions, speculation, and opinion." Moore further complains that while he was detained in the lot after the June 30, 2023 break-in, there was no further investigation to determine whether the items found in his possession had actually been stolen.

{¶ 22} The State reiterates that Moore was apprehended in the parking lot on June 30, 2023, and electronic monitoring confirmed that he was in the lot again on March 4, 2024. The State again emphasizes that the intent to steal may be established from all the facts and circumstances, and it insists that the jury properly concluded that Moore's intent to steal was evidenced by his presence in the locked lot and by the fact that he was found to be in possession of the numerous items described above.

8.

{¶ 23} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins,* 78 Ohio St.3d at 387. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 2012-Ohio-6068, ¶ 15 (6th Dist.), citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 24} In *State v. Atwater,* 1999 WL 812251, *4 (2d Dist. Sept. 30, 1999), the court rejected the defendant's manifest-weight challenge where the defendant was found at 1:00 a.m. inside a tow lot surrounded by a six-foot fence topped with barbed wire. There were no items found on the defendant's person, but there was evidence that there were items missing from some of the vehicles and that a second person may have been involved. The court acknowledged that "[t]here is a reasonable inference that when a person forcibly enters a dwelling or business, that he has an intent to commit a theft offense, unless the facts and circumstances indicate a different inference." *Id.* "In fact," the court observed, "even if the defendant is apprehended before any additional acts beyond the trespass have occurred, there can be sufficient evidence to convict him of breaking and entering." *Id.*

9.

{¶ 25} As described above, the State presented evidence of both the "trespass" and "purpose to steal" elements of the offense. He was apprehended *in* the lot on June 30, 2023. And even taking into consideration the 100-foot margin of error, electronic monitoring showed that he was inside the lot from 1:38 until 2:11 a.m. on March 4, 2024; only one person was detected in the lot in the video evidence for that night. This evidence supported the jury's conclusion that Moore was the person depicted in the video.

{¶ 26} Moore's presence in the locked, barbed-wire lot full of unattended vehicles supported an inference of his purpose to commit a theft offense. As to the June 30, 2023 break-in, this inference was strengthened by the setting off of the car alarm and Moore's possession of a hodge-podge of items that people tend to store in their vehicles. As to the March 4, 2024 break-in, the inference was strengthened by the video evidence showing someone matching his general description peering into and rifling through vehicles. We cannot say that the jury clearly lost its way in concluding that Moore trespassed in the Taylor lot with the purpose to commit a theft offense.

{¶ 27} Under a manifest-weight standard we consider the credibility of witnesses, however, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 2012-Ohio-616, ¶ 14 (6th Dist.). "The jurors are free to believe some, all, or none of each witness' testimony and they may separate the credible parts of the testimony from the

10.

incredible parts." *State v. Hill*, 2024-Ohio-2744, ¶ 24 (7th Dist.), citing *State v. Barnhart*, 2010-Ohio-3282, ¶ 42 (7th Dist.), citing *State v. Mastel*, 26 Ohio St.2d 170, 176 (1971). "When there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, we will not choose which one is more credible." *Id.,* citing *State v. Gore*, 131 Ohio App.3d 197, 201 (7th Dist. 1999).

{¶ 28} Here, the State offered a reasonable view of the evidence. We cannot say that the jury clearly lost its way in accepting the State's version of events. This is not the exceptional case in which the evidence weighs heavily against the conviction.

{¶ 29} We find Moore's second assignment of error not well-taken.

### III. Conclusion

{¶ 30} The State presented sufficient evidence of the "trespass" and "purpose to commit a theft offense" elements of breaking and entering. The jury did not lose its way when it accepted the State's version of events. Moore's convictions are supported by sufficient evidence and are not against the weight of the evidence. We find his assignments of error not well-taken and affirm the May 28, 2024 judgments of the Lucas County Court of Common Pleas. Moore is ordered to pay the costs of this appeal under App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


| Christine E. Mayle | |
|---|---|
| | JUDGE |
| Gene A. Zmuda | |
| | JUDGE |
| Myron C. Duhart | |
| CONCUR. | JUDGE |


This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.