**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 4, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 05-2209

LOUIS J. CHAVEZ,

Defendant-Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CR-04-1348-MCA)**

David A. Streubel, Kelley-Streubel LLC, Albuquerque, New Mexico, for Defendant-Appellant.

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, and Laura Fashing, Assistant United States Attorney, with him on the brief), Office of the United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

Before **HENRY**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

A jury convicted Gilbert Herrera and Louis John Chavez of conspiring to traffic cocaine. During the trial, and over the objections of Herrera and Chavez,

the district court allowed a federal law enforcement agent to testify to the presence of Chavez's truck at the scene of two alleged drug exchanges. That portion of the agent's testimony was not based on personal information, but relied instead on information overheard from radio surveillance reports.

Upon further consideration while hearing the testimony, the district court reversed its ruling allowing the testimony. The court found the testimony inadmissible hearsay in violation of the Sixth Amendment's Confrontation Clause and struck the portion relying on radio surveillance. The defendants immediately moved for a mistrial. The district court denied the motion, concluding that a curative instruction directing the jury to ignore the testimony would adequately address the hearsay violation.

We agree with the government that the admission of the testimony was harmless error. Accordingly, we affirm the district court's denial of the motion for mistrial.

## I. Background

After nearly a four-year investigation conducted by the Federal Bureau of Investigation, the government charged Louis Chavez and his brother-in-law, Gilbert Herrera, with conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846. Herrera and Chavez were tried together before a jury beginning on November 9, 2004.

On the trial's second day, the government called FBI Agent Michael Krause to testify to various aspects of the FBI's surveillance of Herrera and Chavez. Before his testimony began, the government conceded that Krause would attest to what other agents observed and contemporaneously described over the radio. The government informed the court that the other agents would not take the stand. Counsel for Herrera objected to the propriety of Krause testifying to the observations made by non-testifying agents claiming a violation of the Sixth Amendment's right of confrontation. According to the defendants, the non-testifying agents were available to testify at trial and their proposed testimony had never been tested by cross-examination, and therefore Agent Krause's testimony would violate the rule established in *Crawford v. Washington,* 541 U.S. 36 (2004) (holding that testimonial hearsay violates the Sixth Amendment).

The district court ruled that Agent Krause's proposed hearsay evidence would be testimonial in nature and thus implicated *Crawford*, but allowed the government to proffer the testimony. In its proffer, the government explained that Agent Krause would testify that on two occasions he heard other FBI agents on the radio describing their observations of Chavez's white truck arriving at and departing from Herrera's residence at about the same time as Victoria Guillen, a paid informant for the FBI. Under FBI instruction, Guillen arranged for the meetings and would later testify at trial that she obtained cocaine from the two. At this point, counsels for Herrera and Chavez renewed their objection to the

3

testimony regarding the white truck under *Crawford* since they would not be afforded the opportunity to confront the agents who observed the truck.

The court upheld its prior decision to prohibit Agent Krause from testifying about what other agents told him over the radio regarding Guillen's activities. The court reasoned that since the FBI arranged for the drug exchange and orchestrated Guillen's movement, her anticipated activities could not properly fall into the spontaneous, present sense impression exception to hearsay rules. Nevertheless, the court permitted Agent Krause to testify to other agents' observations of vehicles unrelated to Guillen, which included the presence of Chavez's truck. Counsel for Herrera registered a continuing objection to such testimony.

Agent Krause proceeded to testify that on September 18, 2000, shortly before Guillen arrived at Herrera's residence to conduct a pre-arranged cocaine exchange, a white pickup truck arrived at the house. After the meeting, Guillen turned over cocaine received from Herrera and Chavez to the FBI. Agent Krause stated that the white truck was later identified as belonging to Chavez. Agent Krause also testified that on September 25, 2000, the same white truck arrived at the Herrera residence shortly before Guillen went to the house to conduct another cocaine exchange. Again, Guillen turned over cocaine received from the deal.

While on the stand, the court became concerned that Agent Krause did not reveal his testimony was based on reports gleaned from radio surveillance reports

4

and that he did not personally observe the white truck. The court asked the government to lay the foundation for Agent Krause's observations. After the government's attempt to do so, the court reversed itself and announced,

> The ruling I made earlier concerning what the witness could or could not testify to with respect to what he heard on a radio, what was reported on the radio, you had indicated that there was other - I took it to mean unrelated matters that were being brought up that didn't involve Ms. Guillen or her vehicle or her approach to the house and her responding, playing her part under the plan to go to the house.
>
> [W]e are now talking about Chavez and Hererra in the same sentence, testimony concerning buys that occurred at a later time. It's a conspiracy allegation, and I'm not sure as I look at [Agent Krause's] testimony and listen to what he's saying that I can separate out or the jury can separate out any of this. It's all part of one plan and scheme. It's very clear. I'm going to sustain that objection. I am going to give an instruction to the jury.

App. Vol. VIII at 108–09.

The court then decided, "I'm going to strike the testimony of witness Krause as to any matters relating to a white truck being observed on the 18th or on the 25th because that testimony was not from his own personal knowledge or observation, but I'm going to offer the defendants a limiting instruction." *Id.* at 124. The court also offered the government the opportunity to call the agents who personally witnessed the white truck to testify. The government declined since it would require calling four to six witnesses to the stand.

Counsel for Herrera immediately moved for a mistrial arguing that a limiting instruction could not cure the prejudice suffered from the placement of

5

Chavez's car at two purported drug deals. The court included Chavez as joining the motion, but rejected the motion and submitted a curative instruction to the jury.[1]

The remainder of the government's case involved two other witnesses, Paul John Montoya and Victoria Guillen. Montoya testified that between the fall of 2000 and November 2003, he purchased approximately a quarter kilogram of cocaine from Herrera and Chavez once or twice a month.

Victoria Guillen, a member of Chavez's family and a long-time family friend of Herrera, began working for the FBI as an informant in the summer of 2000. In exchange for her assistance, her husband received a work permit and they received monetary payments from the FBI.

---

[1] The district court stated,

I'm going to instruct you as follows. During the course of the trial, I admitted certain testimony from Agent Krause which I'm going to instruct you to disregard. That testimony referred to observations of a white truck at a location on September 18 and September 25 of the year 2000. This information was received from other agents, and it involved reference to a white truck on two occasions. This testimony was erroneously admitted, and I have stricken it from the record in its entirety as it relates to the truck, and also, the fact that the truck was registered to the Defendant Louis John Chavez. I instruct you that this testimony must not be considered by you as evidence in this case and must not be considered in your deliberations.

App. Vol. VIII at 141.

6

Guillen testified that the FBI instructed her to meet with Herrera to consummate a cocaine purchase on September 18, 2000. When she went to Herrera's residence, she observed Herrera and Chavez sitting in a white truck with Herrera in the driver's seat and Chavez in the passenger seat. She further testified that she got into the truck and paid Herrera $250 for the cocaine he had previously given her and that Chavez dropped another ounce of cocaine in her purse while she was in the truck. She did not have the money to pay for the cocaine but Herrera and Chavez agreed to let her pay them back later. She remitted the cocaine to the FBI after the meeting.

Guillen also testified she went to Herrera's property on September 25, 2000 to pay for the cocaine they gave her at the September 18th meeting. When she arrived at the property, she noticed Herrera sitting in a white truck with another individual. Herrera and Guillen exited their cars and Guillen paid $550 for the cocaine. She also testified that she talked to both Herrera and Chavez, sometimes together and sometimes separately, to arrange other purchases of cocaine. Many of these conversations were recorded and introduced into evidence.

On November 15, 2004, the jury found Herrera and Chavez guilty of the conspiracy charge. The district court subsequently sentenced Chavez to a ten-year term of imprisonment followed by an eight-year term of supervised release.

## II. Analysis

Chavez contends that the district court abused its discretion by refusing to grant a mistrial after the prosecution introduced inadmissible hearsay testimony in violation of the Sixth Amendment's Confrontation Clause.[2]

Violations of the Confrontation Clause are subject to harmless error analysis, *United States v. Summers*, 414 F.3d 1287, 1303 (10th Cir. 2005), under which "the beneficiary of a constitutional error must prove beyond a reasonable doubt [that] the error complained of did not contribute to the guilty verdict." *United States v. Burson*, 952 F.2d 1196, 1201 (10th Cir. 1991) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). We review the record de novo.

In assessing harmless error, we look to "the context in which the statement was admitted, how it was used at trial, and how it compares to the properly admitted evidence." *Summers,* 414 F.3d at 1303; *United States v. Toles*, 297 F.3d 959, 968 (10th Cir. 2002). Several factors are helpful in determining whether a Confrontation Clause violation amounts to harmless error, among them (1) the importance of the witness's testimony in the prosecution's case, (2) the cumulative nature of the testimony, (3) the presence or absence of corroborating

---

[2] The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The government does not challenge the district court's ruling that Agent Krause's testimony violated the Confrontation Clause under *Crawford*. We assume without deciding that the district court's ruling is correct for purposes of this appeal.

or contradictory testimony, (4) the extent of cross-examination otherwise permitted, and (5) the overall strength of the prosecution's case. *Id.* (citing *Toles*, 297 F.3d at 968).

In this case, for a number of reasons, we are satisfied that Agent Krause's testimony in contravention of the Sixth Amendment was harmless. First of all, the testimony was cumulative of eyewitness testimony. Agent Krause described the surveillance operations that took place on September 18 and 25, 2000. He described the arrival of a white truck at Herrera's residence on September 18 shortly before a scheduled drug deal with Victoria Guillen and that the truck was later identified as belonging to Chavez. He then stated that the white truck arrived at the same scene on September 25 shortly before another drug exchange with Guillen and departed shortly after.

Guillen attended both drug deals. In her testimony, she stated that she personally observed the white truck and that it was present at both transactions on September 18 and September 25, 2000. In fact, she described in detail how the September 18th drug deal actually occurred inside the white truck. At the September 25th meeting, she stated that Herrera was sitting in a white truck when she arrived at the location. Accordingly, her testimony goes much further in linking Herrera and Chavez with the white truck at the site of numerous drug exchanges than that of Agent Krause. In any event, Chavez and Herrera offered

9

no contradictory evidence to cast doubt on Guillen's testimony regarding the white truck.

Second, in the context of this trial, Agent Krause's testimony regarding the white truck was relatively unimportant to the government's case considering the totality of evidence against Chavez and Herrera. *See Summers*, 414 F.3d at 1303 (finding substantial evidence of guilt renders a *Crawford* violation harmless beyond a reasonable doubt). The government provided ample evidence to support the conspiracy charge. Guillen testified that she engaged in numerous drug exchanges with both Herrera and Chavez. Many of these conversations were recorded and introduced into evidence. In fact, during one transaction, Chavez was captured on tape cutting a kilogram of cocaine in half. In addition, Paul Montoya testified that he routinely purchased cocaine from Herrera and Chavez, and that they were together during many of the transactions. Any testimony as to the white truck is of limited importance given the overwhelming direct testimony of Chavez's role in the drug conspiracy. Indeed, the fact that the government declined the district court's invitation to call the agents who actually observed the white truck indicates Agent Krause's testimony about the white truck was not central to the government's case.

Finally, the district court's curative instruction diminished any error in admitting the hearsay testimony. *See United States v. Massey*, 687 F.2d 1348, 1353 (10th Cir. 1982) (finding that a curative instruction is a factor in harmless

10

error analysis).  The jury was quickly instructed to disregard that portion of Agent Krause's testimony and jurors are presumed to follow their instructions.  *See United States v. Meridyth*, 364 F.3d 1181, 1184 (10th Cir. 2004).  Moreover, Herrera and Chavez had the opportunity to cross-examine Agent Krause as well as Guillen regarding their observations and memories.  Neither the government nor the defense later referred to the testimony or used it at closing.  In this context, we see no reason to believe the court's curative instruction was inadequate or to find any prejudice arising from the admission of the testimony in light of the substantial other evidence adduced at trial.

In sum, the district court did not abuse its discretion in denying the motion for mistrial.

### III.  Conclusion

We find that error in this case was harmless beyond a reasonable doubt. Accordingly, we affirm Chavez's conviction and dismiss this appeal.