**[Cite as *State v. Scott*, 2025-Ohio-419.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

THOMAS E. SCOTT,

    DEFENDANT-APPELLANT.

CASE NO. 13-24-10

**O P I N I O N**

Appeal from Seneca County Common Pleas Court
Trial Court No. 23 CR 0144

**Judgment Affirmed**

**Date of Decision: February 10, 2025**

APPEARANCES:

    *Joseph C. Patituce* **for Appellant**

    *Angela M. Boes* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Thomas E. Scott ("Scott") appeals the judgment of the Seneca County Court of Common Pleas, arguing that the trial court erred by permitting hearsay testimony; improper witness vouching; impermissible lay witness testimony; and inadmissible prior bad acts evidence at trial. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On December 3, 2022, Scott was driving in the outer westbound lane of West Market Street in Tiffin, Ohio. At the same time, Jacob Coots ("Coots") was driving a car in the inner westbound lane. As they approached an intersection with Teakwood Drive, Coots and Scott proceeded down the roadway alongside each other. Charlotte Phillips ("Phillips") had been driving eastbound on West Market Street and sought to make a left turn onto Teakwood Drive. When Phillips pulled into the intersection, Scott collided with her vehicle. Coots then drove away from the scene.

{¶3} Several police officers were sent to this intersection after dispatch had received reports that two vehicles had been "racing" in the lead up to an accident. (Tr. 211). After arriving at the intersection, Officer Drew Westenbarger ("Officer Westenbarger") made contact with Scott. At the time of the collision, Scott's

girlfriend, Megan Brunty ("Brunty"), and her two-year-old daughter were passengers in his vehicle.

**{¶4}** The police also obtained statements at the scene of the accident from eyewitnesses Chet Matthews ("Matthews") and Gary Tyree ("Tyree"). Since he was not able to make contact with Phillips before she was transported to the hospital, Officer Westenbarger spoke with her at the emergency room. At this time, Phillips was "coming in and out of consciousness." (Tr. 223). After this conversation, Phillips was "cit[ed] for failure to yield while turning left." (Tr. 224). Several hours later, Phillips passed away as the result of the injuries she sustained in the accident.

**{¶5}** In the subsequent investigation, the police were able to obtain video footage of the accident from the security cameras of two local businesses. Based on these recordings, an accident reconstructionist with the Ohio State Highway Patrol, Trooper Ryan D. Thomas ("Trooper Thomas"), concluded that Scott was driving at fifty-three miles per hour as he drove alongside Coots and approached the intersection. The posted speed limit on West Market Street was thirty-five miles per hour.

**{¶6}** On July 27, 2023, Scott was indicted on one count of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a), a third-degree felony, and one count of endangering children in violation of R.C. 2919.22(A), a first-degree misdemeanor. The trial on these charges began on February 5, 2024. Brunty,

Matthews, Officer Westenbarger, and Trooper Ryan testified as witnesses. The jury found Scott guilty of endangering children but acquitted him of aggravated vehicular manslaughter. The trial court issued its judgment entry of sentencing on February 27, 2024.

{¶7} Scott filed his notice of appeal on March 20, 2024. On appeal, he raises the following six assignments of error:

### First Assignment of Error

**The trial court erred by allowing, over objection, witnesses to repeatedly testify to out of court statements being offered for their truth in violation of the Confrontation Clause as laid out in *Bruton v. U.S.* and the Supreme Court's holding in *State v. Ricks*, 2013-Ohio-3712.**

### Second Assignment of Error

**The trial court erred by allowing, over objection, the State to intentionally introduce multiple instances of witnesses vouching for the testimony of other witnesses.**

### Third Assignment of Error

**The trial court erred by allowing, over objection, a police officer to testify to appellant's perceived speed based on watching a video when that officer had no training or experience to allow such a conclusion.**

### Fourth Assignment of Error

**The trial court erred by allowing, over objection, lay witnesses to both guess the speed of appellant's vehicle.**

**Fifth Assignment of Error**

**The trial court erred when it allowed a witness to define the legal definition and terms of the crime of 'drag racing' over the objection of counsel.**

**Sixth Assignment of Error**

**The trial court erred when it allowed witnesses to repeatedly introduce prior bad acts over the objection of counsel when no notice of Evid.R. 404(B) had ever been filed and allowed officers to comment that defendant did not give a written statement.**

*First Assignment of Error*

{¶8} Scott argues that the trial court erred by permitting testimony about statements made by his co-defendant and several eyewitnesses in violation of the protections provided by the Confrontation Clause of the U.S. Constitution.[1]

Legal Standard

{¶9} "The Confrontation Clause guarantees the right of defendants in criminal cases 'to be confronted with the witnesses against him.'" *State v. Little,* 2016-Ohio-8398, ¶ 17 (3d Dist.), quoting U.S. Const., Amend. VI.

> The United States Supreme Court has interpreted this to mean that admission of an out-of-court statement of a witness *who does not appear at trial* is prohibited by the Confrontation Clause if the statement is testimonial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness.

---

[1] Scott also argues that Officer Westenbarger was prompted to give improper opinions about the credibility of eyewitness accounts of the accidents. We will address these arguments under the second assignment of error where Scott more directly addresses this issue. We also note that he does not challenge the identified out-of-court statements as inadmissible hearsay. For this reason, we will limit our analysis accordingly.

(Emphasis added.) *State v. Maxwell*, 2014-Ohio-1019, ¶ 34, citing *Crawford v. Washington*, 541 U.S. 36, 38 (2004).

**{¶10}** However, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *State v. Gutierrez*, 2011-Ohio-3126, ¶ 57 (3d Dist.), quoting *Crawford* at 59, fn. 9. Thus, the Confrontation Clause "does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *State v. Kyles*, 2023-Ohio-489, ¶ 68 (12th Dist.), quoting *Crawford* at fn. 9. *See also State v. Perez*, 2009-Ohio-6179, ¶ 127.

**{¶11}** On appeal, rulings on the admissibility of statements under the Confrontation Clause are reviewed de novo. *State v. Cervantes*, 2022-Ohio-2536, ¶ 10 (3d Dist.). "'De novo review is independent' and is conducted 'without deference to the lower court's decision.'" *State v. Ferguson*, 2024-Ohio-1239, ¶ 17 (3d Dist.), quoting *State v. Hudson*, 2013-Ohio-647, ¶ 27 (3d Dist.). However,

> in cases where the defendant has established a violation of rights under the Confrontation Clause, the Supreme Court of Ohio has consistently applied a harmless-error analysis to determine whether the issue prejudiced the defendant.

*State v. Stevens*, 2023-Ohio-3280, ¶ 27 (4th Dist.), citing *State v. McKelton*, 2016-Ohio-5735, ¶ 192. *Delaware v. Van Arsdall*, 475 U.S. 673, 674 (1986).

> Whether a Sixth Amendment error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence. Instead, the question is whether there is a reasonable

possibility that the evidence complained of might have contributed to the conviction.

*State v. Bush*, 2023-Ohio-4473, ¶ 98 (3d Dist.), citing *Chapman v. California*, 386 U.S. 18, 24 (1967). *See McKelton* at ¶ 190; *Carter* at ¶ 47.

**{¶12}** A "'reasonable possibility' does not exist, and the error is harmless, where there is 'overwhelming evidence of the accused's guilt or some other indicia that the error did not contribute to the conviction.'" *State v. Goff*, 2005-Ohio-339, ¶ 12 (9th Dist.), quoting *State v. DeMarco*, 31 Ohio St.3d 191, 195 (1987).

> Overwhelming proof becomes readily apparent when 'the allegedly inadmissible statements * * * at most tend[ ] to corroborate certain details' of the state's case-in-chief. * * * Accordingly, the admission of purely cumulative evidence in violation of the Sixth Amendment amounts to harmless error.

(Brackets sic.) *State v. Carter*, 2024-Ohio-1247, ¶ 46, quoting *Schneble v. Florida*, 405 U.S. 427, 431 (1972).

Legal Analysis

**{¶13}** Scott asserts that his rights under the Confrontation Clause were violated when Officer Westenbarger testified about several witness statements that were given to the police by Matthews, Tyree, and Coots. However, Matthews was called by the State to testify as a witness at trial and was ably cross-examined by defense counsel. For this reason, any out-of-court statements from Matthews that may have been introduced during Officer Westenbarger's testimony are not subject to the Confrontation Clause. *See State v. Bender,* 2020-Ohio-722, ¶ 11 (3d Dist.);

*State v. Thomas,* 2015-Ohio-5247, ¶ 15, 18 (9th Dist.); *Kyles*, 2023-Ohio-489, ¶ 64, 69-70. *See also McKelton* at fn. 4.

**{¶14}** We turn now to the challenged statements from Tyree and Coots. At trial, Officer Westenbarger testified that Tyree witnessed the accident "and advised that he didn't think * * * nobody was racing or speeding." (Tr. 257). However, Tyree's statement contradicts the State's theory of this case and was favorable to Scott. For this reason, we conclude that this testimony did not reasonably contribute to Scott's conviction. Thus, even if admission of this statement was inconsistent with the requirements of the Confrontation Clause, any error was harmless beyond a reasonable doubt.

**{¶15}** Next, the State asked Officer Westenbarger what he came to "learn" during the police interview with Scott's co-defendant, Coots. (Tr. 275). Officer Westenbarger responded as follows:

> Mr. Coots advised that he believed he was doing about between 35 to 38 miles an hour. He stated that he wasn't purposely racing anybody. He did notice that with Mr. Scott's revving the engine that he could have been trying to race him, but again denied taking part in it.

(Tr. 275). As an initial matter, we note that a sidebar was held immediately after this testimony was elicited. The trial court then gave the following instruction to the jury:

> Ladies and gentlemen, we're back on the record. The testimony–the question and answer should be disregarded, stricken involving the last couple questions of [the prosecutor]. So you should disregard

-8-

anything that was dealing with that other person [Coots], okay. You must disregard it, okay.

(Tr. 276). "A jury is presumed to follow the curative instruction given by the trial court to disregard any evidence to which an objection is sustained." *State v. Smith*, 2020-Ohio-427, ¶ 54 (3d Dist.), quoting *State v. Dodson*, 2012-Ohio-5576, ¶ 13 (3d Dist.). *See also U.S. v. Chavez*, 481 F.3d 1274, 1278 (2007); *U.S. v. Owens*, 953 F.2d 391, 394 (1992) (relying in part on a curative instruction to find that an alleged Confrontation Clause violation was harmless).

{¶16} For several reasons, we find that any error was cured by the trial court's instruction. First, Coots denied drag racing and speeding in the challenged statement. Thus, this testimony was generally favorable to Scott. Second, the statement in which Coots described a noise that sounded like Scott was revving his engine was cumulative to other evidence. At trial, Brunty testified that she was in the vehicle with Scott and that she heard him revving the engine. Further, two of the eyewitnesses who testified at trial—Chester Matthews and Troy Russell—described the revving noises that they heard coming from Scott's vehicle before he sped down the roadway. Third, Officer Westenbarger testified that Scott explained that he had been having engine trouble and Scott stated that this might explain why the eyewitnesses thought he was trying to drag race. Thus, the jurors heard Scott's alternative explanation for the noises that Coots described.

**{¶17}** Having examined the contents of the record, we find no reason to dispense with the presumption that the jurors followed the trial court's curative instruction. We conclude that, even if the challenged statement was given in violation of the Confrontation Clause, any resulting error was harmless beyond a reasonable doubt. Accordingly, the first assignment of error is overruled.

*Second Assignment of Error*

**{¶18}** Scott argues that the trial court erred by allowing witnesses to vouch for the credibility of other witnesses.

Standard of Review

**{¶19}** The decision to admit or exclude evidence is committed to the sound discretion of the trial court. *Little*, 2016-Ohio-8398, ¶ 8. For this reason, an appellate court reviews a trial court's determination on the admission of evidence under an abuse of discretion standard. *State v. Sullivan*, 2017-Ohio-8937, ¶ 20 (3d Dist.). Thus, an appellate court is not to substitute its judgment for that of the trial court but will reverse the trial court's decision if it is unreasonable, arbitrary, or capricious. *State v. Howton*, 2017-Ohio-4349, ¶ 23 (3d Dist.).

Legal Standard

**{¶20}** "In our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." *State v. Eastham*, 39 Ohio St.3d 307, 312 (1988). Thus, a witness

"infringe[s] upon the role of the finder of fact" by providing an opinion as to the credibility or veracity of another witness. *State v. Bruce*, 2023-Ohio-3298, ¶ 60 (3d Dist.), quoting *State v. Smith*, 2017-Ohio-9283, ¶ 46 (10th Dist.). "No improper vouching occurs so long as the prosecutor or the witness does not express any personal belief about another witness' credibility." *State v. Paige*, 2019-Ohio-1088, ¶ 45 (7th Dist.). Further, "[a]n officer is not vouching for witness credibility, however, by explaining the investigative procedure he followed." *State v. Sutton*, 2014-Ohio-1074, ¶ 49 (8th Dist.).

## Legal Analysis

**{¶21}** Scott argues that Officer Westenbarger improperly vouched for the credibility of witnesses when he testified about whether the eyewitness accounts from Tyree, Matthews, and Brunty were "corroborated" by the security camera footage of the accident. (Tr. 256). As an initial matter, we note that Officer Westenbarger never offered an opinion as to whether any of these witnesses were truthful or credible. *See State v. Schmelmer*, 2022-Ohio-57, ¶ 116 (5th Dist.).

**{¶22}** Further, this challenged testimony came as Officer Westenbarger was detailing the investigatory steps that he took after arriving at the scene of the accident. *See State v. Monroe*, 2011-Ohio-3045, ¶ 34 (8th Dist.). He indicated that the "first course of action" he took was "[t]o try to obtain witnesses." (Tr. 216). He then explained the following:

There was a lot going on. There were a lot of people standing around. Took a little bit to decipher who saw what or if anybody saw anything. Originally we had several witnesses that stated they saw it, but after speaking with them, they just happened to see after—like after the fact, after it was all said and done.

(Tr. 216). The police were subsequently able to obtain security camera footage of the accident and relied on this evidence in examining the accounts that had been provided by eyewitnesses at the scene. (Tr. 216).

{¶23} Officer Westenbarger's testimony indicates that a number of these accounts were not corroborated by the video footage because these witnesses "didn't have any information as to seeing what happened prior to the crash * * *[.]" (Tr. 256). Another witness's account could not be "corroborated" because the security camera footage showed that he "wasn't close enough to the defendant's vehicle" to observe what had transpired. (Tr. 256-257). For these reasons, the police investigation did not proceed along the lines of these witness statements.

{¶24} Officer Westenbarger testified that Matthews did not have time to provide a statement at the scene of the accident. For this reason, Officer Westenbarger explained that he had to contact Matthews to obtain a witness statement. Similarly, the police interviewed Brunty to obtain her description of what she observed as a passenger in Scott's vehicle. The police investigation moved forward with these accounts as Officer Westenbarger testified that Matthews and

Brunty's statements were "corroborated" by the video footage and what the police "had learned already from other witnesses." (Tr. 256, 261).

{¶25} Again, we emphasize that Officer Westenbarger never stated that any of these accounts was true or false. He also did not make any statements regarding whether he believed any of these witnesses were truthful or credible. *See Schmelmer*, 2022-Ohio-57, ¶ 128. To the contrary, "say[ing] that one statement corroborated another is not to say that either was true but rather that one agreed with the other, that they were consistent." *State v Smith*, 2011-Ohio-3051, ¶ 29 (8th Dist.); *State v. Black*, 2010-Ohio-660, ¶ 31-32 (8th Dist.) (making a "factual statement" about the consistency of evidence does not convey an opinion about the truthfulness of a witness).

{¶26} Further, during this entire line of inquiry, Officer Westenbarger was also explaining the "general investigatory process as []he gathered information about the incident." *State v. Hughes*, 2015-Ohio-151, ¶ 36 (10th Dist.). In this case, the police obtained numerous witness statements. For this reason, this investigation required the police to sift through these accounts for their consistency. The basis of this analysis was the video footage that was shown to the jurors. *See State v. Moses*, 2018-Ohio-356, ¶ 22 (7th Dist.) (holding that the prosecution cannot imply that a "witness's testimony is corroborated by evidence known by the government but not known by the jury").

**{¶27}** Having examined the challenged testimony, we conclude that Officer Westenbarger's explanation of this process did not encompass any impermissible witness vouching in this case. *Sutton*, 2014-Ohio-1074, ¶ 51. For these reasons, the second assignment of error is overruled.

*Third and Fourth Assignments of Error*

**{¶28}** We will consider the third and fourth assignments of error together because Scott argues in both that the trial court erred by permitting several lay witnesses to testify about how fast he was driving down the roadway.

Legal Standard

**{¶29}** Different rules govern the admissibility of opinion testimony from expert witnesses and lay witnesses. *See* Evid.R. 701, 702. Evid.R. 701 governs the admissibility of opinion testimony from lay witnesses and reads as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

"The distinction between lay and expert witness opinion testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" *State v. McKee*, 91 Ohio St.3d 292, fn. 2 (2001), quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992).

-14-

**{¶30}** "The line between expert testimony under Evid.R. 702 and lay opinion testimony under Evid.R. 701 is not always easy to draw." *State v. Salyers*, 2020-Ohio-147, ¶ 30 (3d Dist.), quoting *State v. Ndao*, 2017-Ohio-8422, ¶ 25 (2d Dist.). The Ohio Supreme Court has recognized that "courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702." *McKee* at 296.

> Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they still fall within the ambit of the rule's requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue. These cases are not based on specialized knowledge within the scope of Evid.R. 702, but rather are based upon a layperson's personal knowledge and experience.

*Id.* at 297. Additionally, "police officers may offer lay opinion testimony under Evid.R. 701 if it is based on the officers' perceptions through experience." *State v. Lavender*, 2019-Ohio-5352, ¶ 96 (1st Dist.).

**{¶31}** Further, "the erroneous admission of lay opinion testimony 'does not give rise to grounds for reversal where the opinion testimony was not [unfairly] prejudicial to the defendant or where the opinion testimony did not [unfairly] bias the jury against the defendant.'" *State v. Keith*, 2007-Ohio-4632, ¶ 44 (3d Dist.), quoting *State v. Qualls*, 2001 WL 1261240, *4 (3d Dist. Oct. 22, 2001).

Legal Analysis

**{¶32}** Scott raises several arguments herein. First, he argues that the four eyewitnesses to the collision who testified at trial should not have been permitted to give opinions about the rate of speed that Scott appeared to be driving as he approached the intersection. However, as a general matter, "lay witnesses may give their opinions on matters they have actually observed 'such as the speed that an automobile was traveling * * *.'" *State v. Urbina*, 2016-Ohio-7009, ¶ 52 (10th Dist.), quoting *Urbana ex rel. Newlin v. Downing*, 43 Ohio St.3d 109, fn. 2 (1989).

**{¶33}** Scott further argues that the trial court should not have permitted lay witnesses to give specific estimates of how fast he was driving before the accident. *See Johnson v. Greater Cleveland Regional Authority*, 2021-Ohio-938, ¶ 8-9, 11, 78 (8th Dist.); *City of Fairfield v. Casey*, 1999 WL 791530, *2 (12th Dist. Oct. 4, 1999); *State v. Turco*, 1999 WL 543834, fn. 1 (12th Dist. July 19, 1999). However, the State called an expert witness in the field of accident reconstruction, Trooper Thomas, to testify. Based on an analysis of the security camera footage of the accident, Trooper Thomas was able to determine that Scott had been driving at a speed of roughly fifty-three miles per hour just before impact.

**{¶34}** The eyewitnesses who testified at trial stated that Scott was driving somewhere between fifty and sixty miles per hour down the roadway. We conclude that, even if the trial court erred by permitting this testimony, any such error was

harmless because the estimates offered by these lay witnesses, based on their personal observations and experience as licensed drivers, were in line with the calculation offered by the expert witness. Thus, we conclude that this first argument is without merit.

{¶35} Second, Scott points out that Officer Westenbarger testified that the flow of traffic appeared to be going around the posted speed limit of thirty-five miles per hour in the security camera footage and that he (Scott) appeared to be going faster than the flow of traffic. Scott argues that Officer Westenbarger should not have been permitted to offer this opinion based on his observations of the security camera footage since he was not an expert witness.

{¶36} However, Trooper Thomas was qualified as an expert witness. He testified that he "check[ed] a couple of vehicles" and found that these cars were traveling "33 to 38 miles an hour, 40." (Tr. 355). Thus, even if the trial court erred in permitting the challenged testimony from Officer Westenbarger, we conclude that any such error was harmless because his estimate was in line with the expert opinion offered by Trooper Thomas. Further, the jury was also able to view the security camera footage of the accident at trial and could independently conclude whether Scott was traveling faster than the flow of the surrounding traffic. Thus, we conclude that this second argument is without merit.

{¶37} Third, Scott argues that Officer Westenbarger should not have been permitted to answer several questions about what impressions he was left with after reviewing the security camera footage during the investigation. On appeal, Scott initially argues that this testimony was improper because Officer Westenbarger did not personally observe the accident. However, police officers are permitted to testify based upon their experience and knowledge. *State v. Moss*, 2020-Ohio-2862, ¶ 38-39 (6th Dist.) (holding that a police officer could interpret events that were depicted in video footage based upon his experience).

{¶38} Scott also argues that Officer Westenbarger was not qualified to testify about this matter based upon his experience. However, even if this assertion were true, the jury was still able to view the security camera footage and could reach an independent conclusion as to what transpired. We also note that, even though Officer Westenbarger did not personally witness the collision, defense counsel asked him a number of questions about the conclusions he drew from his investigation and about his impressions of the security camera footage.

{¶39} In response to one line of questioning, Officer Westenbarger testified that he determined from his investigation that Phillips had failed to yield while turning left and that he, as a result, gave her a traffic citation at the hospital. In another line of questioning, defense counsel played the security camera footage and then asked a series of questions. Based on this footage, Officer Westenbarger

testified that Scott appeared to have the right-of-way and that the accident would not have happened if Phillips had not turned into the intersection.

**{¶40}** These lines of questioning assumed that Officer Westenbarger had the ability to offer valid opinions about what the security camera footage depicted based upon his experience. Having examined Officer Westenbarger's testimony in its context at trial, we conclude that this second argument is without merit. Accordingly, the third and fourth assignments of error are overruled.

### *Fifth Assignment of Error*

**{¶41}** Scott argues that the trial court erred by allowing the prosecutor to elicit the elements of the offense of street racing during Officer Westenbarger's testimony.

### Legal Standard

**{¶42}** "The prosecuting attorney does not instruct the jury on the law, the trial judge does." *State v. Shine-Johnson*, 2018-Ohio-3347, ¶ 74 (10th Dist.), quoting *State v. Palmer*, 1996 WL 495576, *12 (7th Dist. Aug. 29, 1996). Further, "a prosecuting attorney should not mislead the jury by either misstating the law or the facts." *Shine-Johnson* at ¶ 74, citing *State v. Crossty*, 2009-Ohio-2800, ¶ 45 (12th Dist.).

Legal Analysis

**{¶43}** At trial, the prosecutor asked Officer Westenbarger several questions about the offense of street racing. Scott challenges the following portion of this exchange on appeal:

> [Prosecutor]: And what does that code section set forth as the definition of drag racing?
>
> * * *
>
> [Officer Westenbarger]: More or less two vehicles operating side by side in a–in a quick manner more or less towards a goal or a race.
>
> [Prosecutor]: Accelerating speeds–
>
> [Officer Westenbarger]: Accelerating speeds—
>
> [Prosecutor]: –would you agree?
>
> [Officer Westenbarger]: Yes.
>
> [Prosecutor]: In a competitive attempt to out distance each other–
>
> [Officer Westenbarger]: Yes, ma'am.

(Tr. 278). On appeal, Scott raises two main arguments to challenge this testimony.

**{¶44}** First, Scott argues that the identified exchange provided an incorrect definition of the offense of street racing. R.C. 4511.251 defines "street racing" and reads, in its relevant part, as follows:

> '[S]treet racing' means the operation of two or more vehicles from a point side by side at accelerating speeds in a competitive attempt to out-distance each other *or the operation of one or more vehicles over a common selected course, from the same point to the same point,*

-20-

> *wherein timing is made of the participating vehicles involving competitive accelerations or speeds.*

(Emphasis added.) Scott points out that the Officer Westenbarger did not mention the italicized portion of R.C. 4511.215 and argues that this omission rendered the definition of street racing presented at trial incorrect.

{¶45} However, R.C. 4511.251 provides two separate definitions of "street racing." *State v. Goodman*, 8 Ohio App.2d 166, 170 (7th Dist. 1966). First, street racing is defined as "(1). Two or more vehicles. (2). Operating from a point side by side. (3). At accelerating speeds." *Id.* Second, street racing is defined as "(1). One or more vehicles. (2). Operating over a common selected course, from the same point to the same point. (3). Wherein timing is made of the participating vehicles. (4). Involving competitive accelerations or speeds." *Id. See also In re Wood*, 2007-Ohio-3224, ¶ 8-10 (10th Dist.).

{¶46} In R.C. 4511.251, the two definitions of street racing are joined by the conjunction "or." Thus, conduct that meets either of these two definitions constitutes "street racing" within the meaning of this statute. For this reason, the omission of one of these independent definitions does not render a description of "street racing" incorrect. Since Officer Westenbarger's testimony included all of the component parts of the relevant definition, Scott has failed to establish the State elicited an incorrect definition of "street racing" at trial. Thus, we conclude that this first argument is without merit.

**{¶47}** Second, he argues that the prosecutor should not have been permitted to elicit a legal definition from Officer Westenbarger as this was the province of the trial court. As a general matter, the trial court should shoulder the responsibility of instructing the jurors as to the law. *State v. Wilson*, 2007-Ohio-2298, ¶ 26 (12th Dist.). Scott argues that this testimony was prejudicial because the State elicited an incorrect definition of street racing. However, we have already concluded that the definition of this offense that was provided during Officer Westenbarger's testimony was not incorrect.

**{¶48}** Further, as street racing is a familiar concept, the jury could have, in the absence of any testimony that formally defined the offense, concluded that Scott and Coots were racing towards the intersection after reviewing the security camera footage of the collision. Even if the trial court erred in permitting this testimony, we conclude that such error was harmless. *See State v. Hodgson*, 2021-Ohio-4374, ¶ 4 (11th Dist.). Thus, we conclude that this second argument is without merit. Accordingly, the fifth assignment of error is overruled.

*Sixth Assignment of Error*

**{¶49}** Scott challenges testimony from Officer Westenbarger that relayed several statements that he (Scott) made during his police interview. He primarily argues that these challenged statements improperly introduced evidence of prior bad acts in violation of Evid.R. 404(b).

Legal Standard

**{¶50}** Under Evid.R. 801(D)(2)(a), 'a defendant's statement offered against him is not hearsay." *State v. Parker*, 2017-Ohio-4382, ¶ 73 (7th Dist.). "Admissions of party-opponents, although not hearsay, are still subject to the general rules of admissibility * * *." *State v. Kryling*, 2023-Ohio-1921, ¶ 47 (6th Dist.).

**{¶51}** "Evid.R. 404(B) categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime." *State v. Smith*, 2020-Ohio-4441, ¶ 36. "However, evidence of a defendant's other acts may be admissible for other permissible purposes such as 'proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *State v. Wears*, 2023-Ohio-4363, ¶ 38 (3d Dist.), quoting Evid.R. 404(B)(2). Importantly, "[n]ot all evidence regarding a defendant's behavior constitutes 'other acts' evidence." *State v. Lotzer*, 2021-Ohio-3701, ¶ 23 (3d Dist.). "The definition of the word 'act' includes 'the process of doing something; action' and '[s]omething that is done or performed; deed.'" *Id.*, quoting *State v. Patton*, 74 Ohio App.3d 224, 229 (3d Dist. 1991).

**{¶52}** When testimony about other acts is at issue, a three-step analysis governs the admissibility of such evidence under Evid.R. 404(B)." *State v.*

*Williams*, 2021-Ohio-256, ¶ 16 (3d Dist.). "The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *State v. Williams*, 2012-Ohio-5695, ¶ 20. This "inquiry is not whether the other-acts evidence is relevant to the ultimate determination of guilt. Rather, the court must evaluate whether the evidence is relevant to the particular purpose for which it is offered." *State v. Hartman*, 2020-Ohio-4440, ¶ 26.

**{¶53}** The second step in this analysis involves determining whether the other acts evidence "is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Williams*, 2012-Ohio-5695, ¶ 20. "The key is that the [other acts] evidence must prove something other than the defendant's disposition to commit certain acts." *Hartman* at ¶ 22.

**{¶54}** "The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Williams*, 2012-Ohio-5695, ¶ 20. "As the importance of the factual dispute for which the evidence is offered to the resolution of the case increases, the probative value of the evidence also increases and the risk of unfair prejudice decreases." *Hartman*, 2020-Ohio-4440, ¶ 31. On appeal, the first two steps of this analysis are

reviewed de novo while the third step is reviewed for an abuse of discretion. *Bruce*, 2023-Ohio-3298, ¶ 20, 22.

Legal Analysis

**{¶55}** Scott challenges a number of statements that Officer Westenbarger made during his trial testimony. First, Officer Westenbarger's testimony indicates that, during the police interview, he pointed out to Scott that he had a decal across his windshield that stated "speeding for the cure." (Tr. 190, 266). However, this testimony does not provide any evidence of a prior bad act on the part of Scott. *State v. Patton*, 74 Ohio App.3d 224, 229 (3d Dist. 1991) (An "act" is "[s]omething that is done or performed"; thus, a defendants "oral statements and comments" generally do not "constitute 'other acts' proscribed by Evid.R. 404(B)."). As a decal on his vehicle, this was apparently a statement that Scott wanted to display publicly. For this reason, this decal was also easily observable in the photographs of the accident that were presented to the jury as exhibits. Thus, we conclude that this first argument is without merit.

**{¶56}** Second, Officer Westenbarger testified that Scott stated that "he wasn't going to bullsh*t" the police and admitted that "he had a lead foot." (Tr. 264-265). Immediately after this comment, Officer Westenbarger testified that Scott stated that he was going faster than thirty-five miles per hour down the roadway. Prior to this challenged testimony, Officer Westenbarger stated that Scott

admitted that "he might have been going a little bit faster than the speed" limit but unequivocally stated "that he wasn't drag racing." (Tr. 263). In this context, Scott's admission that "he had a lead foot" appears to be directed at explaining his behavior in the lead up to the accident in this case. (Tr. 265). This statement does not ultimately appear to be describing a prior bad act but his behavior in this case. Thus, we conclude that this second argument is without merit.

{¶57} Third, Officer Westenbarger indicated that he was able to identify Scott at the scene of the accident after having seen him previously "around town with prior incidents." (Tr. 180). This "response did not implicate the appellant in another crime, wrong, or act * * *." *See State v. Thompson*, 2020-Ohio-67, ¶ 37. This statement also did not necessarily refer to the "commission of any crime, wrong, or act." *Id*. Thus, we conclude that this third argument is without merit.

{¶58} Fourth, Officer Westenbarger testified that, during a police interview, Scott mentioned that "he had been stopped before by the police for his driving manners." (Tr. 265). As an initial matter, we note that an expert testified that Scott was driving at fifty-three miles per hour down a street where the posted speed limit was thirty-five miles per hour. Further, in the security camera footage admitted at trial, Scott can be seen driving his vehicle at a speed that clearly exceeded the pace of the flow of traffic. Thus, even if the challenged testimony were considered as evidence of his propensity to speed, such evidence is not prejudicial where video

footage of Scott speeding was introduced into evidence at trial. For these reasons, we conclude that, even if the admission of this testimony constituted an error, any such error was harmless. *See State v. Morris*, 2014-Ohio-5052, ¶ 32. Thus, we conclude that this fourth argument is without merit.

**{¶59}** Finally, Scott asserts that the State committed a *Doyle* violation in a line of questioning with Officer Westenbarger. As a general matter,

> 'Once a person invokes his or her Fifth Amendment right to remain silent, the State cannot use the person's silence [either in pre-arrest or post-arrest circumstances] as substantive evidence of guilt in its case-in-chief.'

(Brackets sic.) *State v. Jones*, 2022-Ohio-3978, ¶ 113 (11th Dist.), quoting *State v. Bennett*, 2014-Ohio-160, ¶ 63 (9th Dist.).

**{¶60}** Under *Doyle v. Ohio*, the "use of a defendant's post-arrest, post-*Miranda* silence for impeachment purposes violates the Due Process Clause * * *." *State v. Young*, 2022-Ohio-4726, ¶ 47, citing *Doyle*, 426 U.S. 610, 618 (1976). In *State v. Leach*, the Ohio Supreme Court extended this principle, holding that "[u]se of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination." *Leach*, 2004-Ohio-2147, at syllabus.[2] These rules "enforce[] one of the underlying policies of the Fifth

---

[2] Scott argues that the State committed a *Doyle* violation in a line of questioning with Officer Westenbarger. However, the challenged testimony was not used for impeachment purposes, and no other testimony establishes whether Scott had been *Mirandized* or arrested. For this reason, we will proceed under the rule announced in *Leach*, 2004-Ohio-2147, at syllabus.

Amendment, which is to avoid having the jury assume that a defendant's silence equates with guilt." *State v. Perez*, 2004-Ohio-4007, ¶ 10 (3d Dist.).

**{¶61}** "However, the introduction of evidence regarding a defendant's decision to remain silent does not constitute reversible error if, based on the whole record, the evidence was harmless beyond any reasonable doubt." *State v. Chavez*, 2020-Ohio-426, ¶ 50 (3d Dist.), quoting *State v. Zimmerman*, 18 Ohio St.3d 43, 45 (1985). The Ohio Supreme Court has held that "[a] single comment by a police officer as to a suspect's silence without any suggestion that the jury infer guilt from the silence constitutes harmless error." *State v. Hecox*, 2022-Ohio-2325, ¶ 50 (3d Dist.), quoting *State v. Treesh*, 90 Ohio St.3d 460, 480 (2001).

**{¶62}** At trial, Officer Westenbarger testified that Scott voluntarily came to the police department for an interview two days after the incident. His testimony indicated that, during this interview, Scott fully explained his version of what transpired prior to the accident. After testifying about the police interview, Officer Westenbarger then mentioned that Scott "declined" to provide a written statement of what had transpired. (Tr. 267). He then testified that Scott consented to a search of his vehicle.

**{¶63}** On appeal, Scott asserts that the State committed reversible error by eliciting testimony about his decision not to provide a written statement to the police. However, this comment came after an extensive discussion of what Scott

had told the police during a police interview. In this context, the challenged testimony simply suggests that Scott opted not to reduce his oral statements to the police into writing.

{¶64} Further, no statement from Officer Westenbarger indicates that Scott ever invoked his right to remain silent or suggests that the jury should infer guilt from his decision not to write down his statement. *State v. Abraham*, 2012-Ohio-4248, ¶ 45 (9th Dist.). Even if this testimony was admitted in error, we conclude that this "brief and isolated" remark was harmless beyond a reasonable doubt. *Id.*, quoting *State v. Powell*, 2012-Ohio-2577, ¶ 162. Thus, we conclude that this fifth argument is without merit. Accordingly, the sixth assignment of error is overruled.

*Conclusion*

{¶65} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Seneca County Court of Common Pleas is affirmed.

**Judgment Affirmed**

**WALDICK, P.J. and MILLER, J., concur.**

**/hls**